UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| deCARLOS FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 3:12-cv-154-PPS |
| vs. | ) |
| | ) |
| JASON RAY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

deCarlos Freeman, a *pro se* prisoner, is suing Elkhart Police Officer Jason Ray in his individual capacity for monetary damages. Freeman alleges that Officer Ray violated his Fourth Amendment rights when Officer Ray searched and arrested him for public intoxication on private property where he was residing. Officer Ray filed a summary judgment motion arguing that the undisputed facts show that he had probable cause to arrest Freeman, that he is entitled to qualified immunity, and that there was not an illegal search. Because this case amounts to a swearing contest between Freeman and Officer Ray, a jury will have to determine who to believe.

Before taking up the summary judgment motion, there are three other motions that need to be addressed, which is where I begin.

## 911 Call Discovery Motion

On June 27, 2011, someone called the Elkhart Police Department and reported that a black male in a white shirt and blue pants (originally described as black), who had been "looking into windows and hanging around the old tax office," was "heading toward the river thru [*sic*] the houses." DE 45-1 at 1. As a result of the call, Officer Ray was dispatched to the area of Sixth

and Franklin Streets to investigate. DE 45-2 at 2. Freeman wants to know who made that phone call. DE 55. However, the identity of the caller is neither relevant nor likely to lead to relevant evidence. Freeman alleges that Officer Ray did not have reasonable suspicion to stop him. According to Freeman, he had been sitting on his porch for 10 to 15 minutes before Officer Ray made contact with him. DE 45-6 at 27. That is to say, he was on his porch before the 911 call was even made. Freeman speculates that the caller was an informant for the Elkhart Police Department who spoke to them "on a regular everyday basis." DE 55 at 1. Freeman says that because he was on his porch (and not looking in windows), that the caller must have been lying. But that's not the question here.

The only relevant question is whether Officer Ray had reasonable suspicion to stop Freeman based on what Officer Ray knew at the time, due in part to the 911 call or otherwise. To be clear, "[t]he reasonableness of the seizure turns on what the officer knew, not whether he knew the truth or whether he should have known more." *United States v. Hicks*, 531 F.3d 555, 560 (7th Cir. 2008) (quoting *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007)). What is relevant here, then, is what the dispatcher told Officer Ray.

Furthermore, reasonable suspicion does not require proof that Freeman was looking in windows, or that the caller was honest about having seen him. It requires only "some minimal level of objective justification for making the stop." *Alabama v. White*, 496 U.S. 325, 329-30 (1990) (quotation marks and citation omitted). This "is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required

2

to show probable cause." *Id.* at 330 (citation omitted). Thus, "[t]he issue is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* at 326-27. "[R]easonable suspicion may be based on a telephone tip when the caller provided enough information to allow police to identify her and track her down later to hold her accountable if her tip proved false." *United States v. Hicks*, 531 F.3d 555, 559 (7th Cir. 2008) (quotation marks and citation omitted). Moreover, "when an officer relies on an emergency report in making a stop, a lower level of corroboration is required." *Id.* at 560.

Here, the police received a call from someone who gave his name, address and telephone number (which are all redacted in the record). DE 45-1 at 1. The caller said that he had personally seen a black male recently looking in windows. He said the suspect was wearing a white shirt and blue pants (again, originally noted in the Event Report as black pants). He said the suspect was walking toward the river and between houses. This call provided more than sufficient information to dispatch a police officer to investigate. That is to say, Officer Ray was justified in looking for a person matching the description and walking in that immediate area toward the river. Officer Ray says that Freeman matched that description when he saw him walking down the street toward the river and cutting between houses only minutes later. DE 45-2 at 2. If true, then Officer Ray's observations corroborated the caller's report and Officer Ray had reasonable suspicion to conduct an investigatory stop of Freeman. So if Officer Ray is telling the truth, Officer Ray's observations bolstered his reasonable suspicion, and the identity of the caller is irrelevant.

Freeman disputes Officer Ray's description of events. He says that he was not walking down the street and that he did not match the description of the suspect. If Freeman is telling the truth and he was sitting on the porch, then Officer Ray did not observe someone matching the description given by the 911 caller, and Officer Ray did not have reasonable suspicion to stop Freeman. The identity of the caller is still irrelevant.

The disputed issue here is whether Freeman was sitting on his porch or walking down the street toward the river. More broadly, the issue is whether he matched the 911 caller's description of the suspect as it was told to Officer Ray by the dispatcher. The identity of the caller is not relevant to either of those questions. The identity of the caller is not relevant to whether Officer Ray had reasonable suspicion to stop Freeman, because the ultimate question is what Officer Ray was told by dispatch and what Freeman was doing when Officer Ray showed up. Therefore, it is unnecessary to permit discovery about the identity of the caller and the discovery motion will be denied.

## **Objection to the Deposition of Colleen Ruiz**

Freeman also objects to the use of the deposition of Colleen Ruiz because he was unable to attend due to his incarceration. DE 57. Defense counsel states that she unsuccessfully attempted to coordinate Freeman's participation with the litigation liaison at the prison where Freeman was housed before she scheduled the deposition. DE 48-1. She also notes that Freeman did not object even though she provided him with more than 30 days notice that the deposition had been scheduled. DE 35 and 59. However, she makes no mention of having conferred with either Freeman or the court in an effort to schedule the deposition of Ruiz in a manner that would have permitted Freeman to have participated. While I appreciate the effort that defense counsel

made, this is disconcerting, as I suggested in my prior order. DE 54. While I am not unsympathetic to the difficulties involved in coordinating with a *pro se* prisoner, basic notions of due process require that all parties be afforded the opportunity to participate in depositions. No doubt defense counsel would find it unacceptable to be sent a notice of deposition without first having been directly contacted to coordinate her attendance. Indeed, doing so would violate this court's local rule which requires that "[a]ttorneys must try in good faith to schedule depositions to avoid calendar conflicts." N.D. Ind. L.R. 30-1(a). Incarceration is certainly a calendar conflict. Perhaps in some instances the conflict is so severe that it cannot be accommodated. However, without direct communication with the prisoner and the Court, it is unclear what might be possible in any given case.

Nevertheless, at this point in this case, I need not decide whether defense counsel's efforts were sufficient to meet the "good faith" standard of the local rules. The status of Colleen Ruiz's deposition is irrelevant to my decision on the motion for summary judgment. Though Ruiz' testimony provides additional evidence in support of both Officer Ray's and Freeman's version of events, it doesn't resolve the disputed material facts which preclude granting summary judgment, as described in detail below. Therefore the objection to the deposition is moot. Should Freeman find it necessary to depose Ruiz, he may seek leave to do so.

## **Amended Motion to Strike the Summary Judgment Motion**

When Officer Ray filed his summary judgment motion, Freeman moved to strike it. DE 52. I denied the motion and informed Freeman that I would consider the filing as a part of his response to the summary judgment motion because it was unclear to me that Freeman understood that this was his last chance to respond to the summary judgment motion. DE 54. I

explained that he had no grounds for striking the motion, but that he needed to respond to it. Inexplicably, he then filed an amended motion to strike. DE 58. Again, there is no basis for striking the summary judgment motion. Therefore the amended motion to strike will be denied. Nevertheless, other than its title and prayer for relief, the motion to strike and its attachments serve as a response to the motion for summary judgment and I will construe them as such.

## Summary Judgment Motion

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" offering specific citations to the record or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

In ruling on a motion for summary judgment, I must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. I will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v.*

*Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

Here, the list of relevant, undisputed facts is short. On June 27, 2011, Officer Ray stopped Freeman in the yard beside 311 Hillside Court where Freeman was living. DE 45-2 at 2, 45-6 at 9-10 and 29-30. Officer Ray gave him a breathalyser test. DE 45-2 at 2 and 45-6 at 33. Officer Ray arrested Freeman for public intoxication. DE 45-2 at 2 and 45-6 at 34. The prosecutor declined to file charges and the case was subsequently dismissed. DE 58-12 at 2.

There are many disputed facts which render summary judgment inappropriate in this case. Officer Ray says that he saw Freeman walking down the street. DE 45-2 at 2. Freeman says that he had been sitting on his porch for 10 to 15 minutes before Officer Ray arrived. DE 45-6 at 27. Freeman says that when he saw Officer Ray approaching, he got up and walked through the yard beside his house toward the river behind his house. *Id.* Officer Ray says that Freeman was wearing a white t-shirt and blue jeans, which matched the description given by a 911 caller. DE 45-2 at 2. Freeman says he was not wearing a white t-shirt. DE 45-6 at 29 and 58-2 at 3. These are genuine disputes about material facts. As I explained above in the section discussing the 911 call, if Officer Ray saw Freeman walking down the street dressed like the suspect, then Officer Ray had reasonable suspicion to conduct an investigatory stop. However, if Freeman was sitting on his porch and was not dressed like the suspect, then Officer Ray was not justified in stopping him.

Turning then to the search, Freeman says that Officer Ray ordered him to stand against the house while Officer Ray patted him down. DE 45-6 at 31 and 52. Officer Ray says that he does not remember searching Freeman. DE 45-3 at 2. This is a disputed fact. If there was no

7

search at all, then Officer Ray cannot be liable for having conducted an illegal search. But even if there was a search, searches incident to a lawful investigatory stop are permissible if the officer reasonably suspects "that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). Here, if the stop was legitimate, Officer Ray was justified in frisking Freeman because he was investigating a possible burglary and "burglary is the type of offense normally and reasonably expected to involve a weapon . . . ." *United States v. Snow*, 656 F.3d 498, 501 (7th Cir. 2011) (quotation marks omitted). Thus, "police do not require additional information suggesting that a suspect might be armed before they may conduct a protective frisk of someone they reasonably suspect of being a burglar." *Id.* Consequently, the legality of the search (if it occurred) turns solely on whether the investigatory stop was legitimate. That is to say, whether Officer Ray saw Freeman walking down the street dressed like the suspect Officer Ray was sent to look for, or whether Freeman was sitting on his porch dressed differently.

Finally, Freeman contends that Officer Ray did not have probable cause to arrest him for public intoxication. Here the disputed facts concern both whether Freeman was intoxicated and whether he was in public. Officer Ray says that he saw Freeman walking down the street – a public place. DE 45-2 at 2. Freeman contends that he was siting on his porch then walking in his yard. DE 45-6 at 27. Although Officer Ray argues that the space between the houses where he stopped Freeman is a public place, the truth here lies in the nature of the space between the houses because "[a] private residence, including the grounds surrounding it, is not a public place." *Moore v. State*, 634 N.E.2d 825, 827 (Ind. Ct. App. 1994) (*citing Price v. State*, 600 N.E.2d 103 (Ind. Ct. App. 1992)). Therefore Officer Ray would only have had probable cause to

arrest Freeman for public intoxication if he saw Freeman in the street, and Freeman was evidently intoxicated. Though Officer Ray argues that there is no evidence that the property between these houses is private and not public land, Freeman lived there and is competent to testify about whether he was in his yard. Moreover, this house is located in an urban, residential neighborhood. So without contradictory evidence, there is no reason to believe that the space between these houses is a public space, and at summary judgment inferences must be drawn in Freeman's favor.

The question of intoxication is also disputed. Freeman says Officer Ray searched him, handcuffed him, and put Freeman in the back seat of the patrol car, then performed three or four breathalyser tests. DE 45-6 at 31-33. Officer Ray says he "could smell the strong odor of an alcoholic beverage coming from [Freeman's] breath [] [and] observed [him] to have slurred speech and red bloodshot eyes." DE 45-2 at 2. He says he that he gave Freeman a breathalyser and that Freeman registered .085 percent. *Id.* Freeman says that he did not drink any alcohol that day. DE 45-6 at 23. Because of this, he argues that he did not smell of alcohol and did not have slurred speech or red bloodshot eyes. DE 58-2 at 2. These are genuine disputes about material facts. If Freeman's version of events is correct, then there wasn't even a reasonable suspicion that he was intoxicated, much less the probable cause necessary to give him a breathalyser test. *See Gutierrez v. Kermon*, 722 F.3d 1003, 1012-13 (7th Cir. 2013); *United States v. Tyler*, 512 F.3d 405, 411-12 (7th Cir. 2008) (reviewing Indiana cases and finding that reasonable suspicion of intoxication requires some type of impairment such as slurred speech). However, if Officer Ray's version is correct, then he had probable cause to give Freeman a breathalyser and to arrest him.

Freeman speculates that Officer Ray lied about the breathalyser test results. DE 58-2 at 2-3. Though that is speculation, and he has not presented any evidence demonstrating that Officer Ray lied, neither has Officer Ray presented anything other than his own testimony to demonstrate the results of the test. So we have a swearing contest. If a juror believed Freeman's testimony that he had not been drinking, it would not be an unreasonable inference for that juror to conclude that Freeman did not fail the breathalyser test.

Based on the many foregoing disputes of material fact that remain, the summary judgment motion must be denied. A trial will determine whether Officer Ray had reasonable suspicion to stop and frisk Freeman; whether Officer Ray had probable cause to give Freeman a breathalyser; and whether Officer Ray had probable cause to arrest Freeman for public intoxication. These are the issues which remain for trial.

### **Qualified Immunity**

Officer Ray argues that he is entitled to qualified immunity, and because of that to summary judgment. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There is a two-part inquiry for determining whether the defense applies: (1) whether the facts plaintiff alleged show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. *Id.* at 815. This does not require inquiry into the defendant's subjective intent. *Harlow,* 457 U.S. at 816-18. Instead, the question is one of "the objective reasonableness of an official's conduct,

as measured by reference to clearly established law." *Id.* at 818. So to decide whether Officer Ray has qualified immunity, I must determine "the currently applicable law," as well as "whether that law was clearly established at the time an action occurred." *Id.* As the Supreme Court further explained, "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*

Freeman alleges that he was sitting on his porch (stone-cold sober and not wearing a white t-shirt) when Officer Ray drove down the street looking for a black male wearing a white t-shirt and blue pants. Seeing the police car, Freeman got up and walked in his yard toward the river behind his house. Officer Ray ordered him to stop, frisked him, handcuffed him, gave him a breathalyser test, and arrested him for public intoxication after lying about the test results. Based on Freeman's version of events, Officer Ray's actions violated Freeman's rights under the Constitution. The rights Officer Ray violated according to the allegations were clearly established well before this misadventure. Even back in 2011, no reasonable police officer could have believed it was legal to stop a person who did not match the description of the suspect he was looking for and who was just sitting and not providing reasonable suspicion. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 17-22 (1968). No reasonable police officer could have believed that it was legal to have given a breathalyser test to a person who exhibited no signs of being intoxicated. No reasonable police officer could have believed that it was legal to falsify breathalyser test results and arrest a person for public intoxication who was both sober and not on public property. Therefore Officer Ray has not demonstrated that he is entitled to qualified immunity.

## **Conclusion**

For the foregoing reasons, the court:

(1) **DENIES** the motion to compel disclosure of the identity of the 911 caller (DE 55);

(2) **DENIES AS MOOT** the objection to the deposition of Colleen Ruiz (DE 57);

(3) **DENIES** the amended motion to strike (DE 58);

(4) **DENIES** the summary judgment motion (DE 43); and

(5) **SETS A TELEPHONIC STATUS CONFERENCE** for March 20, 2014 at 2:30 p.m. that the Case Manager will arrange and initiate with Freeman from prison and with Officer Ray's counsel of record.

**SO ORDERED**.

ENTERED: February 24, 2014

/s/ Philip P. Simon
**Philip P. Simon, Chief Judge**
**United States District Court**