# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| DE'CARLOS FREEMAN, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 3:12-cv-00154-PPS |
|  | ) |  |
| JASON RAY, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff De'Carlos Freeman sued Elkhart Police Officer Jason Ray for allegedly unlawfully stopping and arresting Freeman. The parties filed a joint stipulation of dismissal, so the case was terminated. Freeman has now sent a letter stating that he signed the stipulation under duress, so the agreement is invalid. (DE 69.) Freeman doesn't explain under what rule he is objecting to the stipulation and termination of the case, so I will construe his letter as filed under Federal Rule of Civil Procedure 60(b), seeking relief from a judgment or order based on misconduct by an opposing party or some other reason that justifies relief. Defendant Jason Ray responded to Freeman's objection, denying any coercion. (DE 70.) Freeman moved to strike Ray's response, but didn't explain why striking the response under Rule 12(f) is appropriate, instead essentially rearguing the merits. (DE 72.) I will therefore construe Freeman's motion to strike as a reply in support of his Rule 60 motion for relief from a judgment or order. The motion is fully briefed, and I will take it up. Ultimately, because neither the circumstances nor the facts point to coercion, and it rather seems like a case of buyer's (or settler's) remorse, Freeman's motion will be denied.

At a telephonic status conference held in March 2014, after Ray's motion for summary judgment was denied (DE 64), the parties and the Court discussed logistics of the trial in this case. Freeman said that he expected to be released from prison (on a conviction unrelated to the facts of this civil case) in January 2015, and he would prefer to try the case after his release. Counsel for Defendant consented to this, and another status conference was set for September 2014. After making plans to try the case following Freeman's release from prison, I briefly discussed with each party separately the possibility of settling the case. A settlement was not reached during that session, but the parties stated that they would discuss settlement directly, without Court involvement, and would notify the Court if they reached an agreement. I also told the parties that either could request Court assistance by filing a motion for a settlement conference. (Docket Entry 65.)

Three months passed, and on July 3, 2014 Defendant filed a joint stipulation of dismissal, with prejudice, signed by counsel for Defendant and by Freeman, representing himself (these two signatures constituted agreement by all of the parties to the case). (DE 67.) Federal Rule of Civil Procedure 41(a)(1)(A)(ii) allows the plaintiff to dismiss his case without a Court Order by filing a stipulation of dismissal signed by all parties who have appeared in a case. I therefore acknowledged the joint stipulation, and the Clerk of Court terminated the case on July 7, 2014. (DE 68.)

On July 11, 2014 a letter from Freeman was docketed. (DE 69.) Freeman wrote that he "signed all documents under duress by putting three dots and intended to write

V.C. but were prevented nullifying any agreement." (*See* DE 69, 70-2 at 2, 3.) Freeman does not allege how counsel for Defendant put Freeman under duress. Freeman ends the letter by alleging that I participated in coercing his agreement: "I was informed by the District Judge on March 20, 2014 that I basically would lose at trial to Jason Ray due to the fact I haven't been to school for law which is coercion, which proves my signatures are actus." (DE 69.)

Rule 60(b) presents a high hurdle. It "provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. A motion thereunder to vacate a judgment is addressed to the sound legal discretion of the trial court, and its determination will not be disturbed except for abuse of discretion." *Di Vito v. Fidelity & Deposit Co.*, 361 F.2d 936, 938 (7th Cir. 1966) (citations omitted). Nebulous allegations of wrongdoing won't suffice; the party seeking relief must present clear and convincing evidence. *See, e.g.*, *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995).

Freeman has not stated even a prima facie case of coercion. He baldly asserts that he signed the agreement under duress, but gives no indication of what form the duress took, or who on the defense side applied it. He suggests that the ellipsis before his signature on the stipulation and release signaled duress, but that doesn't elucidate the form of the duress, and in any event I am unfamiliar with that use of the ellipsis and have seen no case law to support it. He also suggests that writing "V.C." with his signature would have signaled duress, and that he was prevented from writing it, but it's unclear who prevented him or otherwise coerced him at signing, because defense

counsel mailed the stipulation to Freeman and was not present for the signing. (DE 70 ¶ 2.)

Freeman may have intended to retain an ability to take back his consent if he changed his mind or saw an opportunity to force a larger payout, but all indications in the evidence and circumstances are that he freely agreed to the terms of the settlement. Based on the exhibits attached to Ray's response to Freeman's motion, it appears that Ray offered $3,000 to settle Freeman's claim, Freeman demanded an additional $1,000, defense counsel conveyed the demand to someone with settlement authority, and the demand was refused. (DE 70-1.) This all appears to follow a normal, non-coercive negotiation pattern. The refusal to increase a settlement offer may be a rigid approach to negotiation, but the fact that Freeman felt he had to accept the offer or risk getting nothing at trial isn't coercion. The sum of $3,000 isn't so paltry, given the facts here, so as to suggest that no uncoerced plaintiff would accept it. In fact, Freeman's handwritten letter accepting the $3,000 offer does so without reservation, and is signed without an ellipsis. Here's what he said to counsel for Defendant in his correspondence: "I am willing to accept the $3000. Please see if you can bring the check to the facility without delay." (DE 70-1 at 2.) There was nothing forcing Freeman into accepting the money. His case was awaiting trial, and a telephonic status conference was set. He could have held out for the trial, or requested a settlement conference if he wanted to negotiate further. He chose the certainty of payment now.

The record belies his claim that I coerced him, too. It should go without saying

that I can't make anyone accept a settlement. *See, e.g.*, *Goss Graphics Sys. v. DEV Indus.*, 267 F.3d 624, 627 (7th Cir. 2001). Encouraging parties to settle, and warning them of the risks of going to trial, is a far cry from coercion, however, and is well within a trial court's bailiwick. "Coercion occurs when a judge threatens to penalize a party that refuses to settle. But a judge may encourage settlement, and he or she is not prohibited from expressing a negative opinion of a party's claim during discussions as a means to foster an agreement." *Gevas v. Ghosh*, 566 F.3d 717, 719-20 (7th Cir. 2009) (citations omitted). Even if Freeman's allegations about my conduct were true, they don't show a threat of adverse action by the Court, just a warning that Freeman would have a tough row to hoe at trial.

In this case, the record from the March 2014 hearing demonstrates that my clear assumption was that this case would go to trial, as is the parties' right. Settlement was a secondary matter. The March status hearing began with a detailed discussion of the upcoming trial, indicating an assumption that there would be a trial, not a settlement. It was agreed that trial would be scheduled much further in the future than would usually be the case, entirely to accommodate Freeman. It is typical in settlement discussions to address potential trial outcomes, and the benefits to all parties of settling. Advising Freeman of the realities of trial and the advantages of settling are not coercion, but sound advice. Furthermore, Freeman won the only potentially dispositive motion filed in this case in spite of his apparent refusal to respond to it, which required me to broadly construe Freeman's motion to strike, and his amended motion, as responses to

5

Ray's motion for summary judgment. (DE 64 at 5-6.) Any allegation that I intended to penalize Freeman couldn't be further from the truth. Freeman prevailed in the face of Ray's motion for summary judgment, and my Order there assumed a trial and informed Freeman exactly what he needed to show to prevail at trial:

> Based on the many foregoing disputes of material fact that remain, the summary judgment motion must be denied. A trial will determine whether Officer Ray had reasonable suspicion to stop and frisk Freeman; whether Officer Ray had probable cause to give Freeman a breathalyser; and whether Officer Ray had probable cause to arrest Freeman for public intoxication. These are the issues which remain for trial.

(DE 64.)

In summary, Freeman has failed to demonstrate that he was coerced into settling. Three months went by between the telephonic status conference and the settlement of the case. Ultimately, Freeman eagerly accepted Ray's offer of a $3,000 settlement payment and signed the stipulation when it was sent to him. A valid check was immediately cut and mailed to Freeman, in care of Westville Correctional Facility, where Freeman is incarcerated. Nothing about the case has changed since Freeman signed the stipulation and sent it back to defense counsel to file, except that the settlement check has been paid out and Freeman has the money. The circumstances of settlement do not suggest coercion.

One final, peripheral issue requires discussion. In his response to Freeman's motion, Ray moved for an award of attorney's fees for the cost of drafting the response

on the grounds that Freeman's motion was frivolous and fraudulent. (DE 70.) The request for sanctions doesn't identify its legal basis, but presumably Ray intended to invoke Rule 11. Rule 11 allows for sanctions when a party files a document the contents of which aren't warranted by law or aren't supported by the evidence, to the best of the filer's knowledge after a reasonable inquiry. "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1013 (7th Cir. 2004) (citation omitted); *see also Mortle v. UPS*, 247 Fed. Appx. 820, 823 (7th Cir. 2007). A motion seeking Rule 11 sanctions "must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Ray improperly put his request for sanctions into the end of his response to Freeman's Rule 60 motion. Even if the motion were properly presented, it would be denied at this point because in deciding on a motion for sanctions I can consider a party's status as a pro se, non-lawyer litigant, and I can also consider a party's financial resources. *See Mortle*, 247 Fed. Appx. at 823 (citing *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990); *DiPaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005)). I granted Freeman permission to file this case *in forma pauperis* due to his financial situation (DE 6), and it is doubtful that two years in prison have improved his financial status. This decision should not be taken as encouragement of frivolous litigation, but simply a finding that sanctions against Freeman aren't warranted at this point.

**CONCLUSION**

For the foregoing reasons, Freeman's letter, construed as a motion brought under

7

Rule 60, seeking relief from a judgment or order based on misconduct by an opposing party or some other reason that justifies relief, is **DENIED**. (DE 69.) Freeman's motion to strike Ray's response to Freeman's Rule 60 motion is also **DENIED**. (DE 72.) Ray's request for attorney's fees is likewise **DENIED**. (DE 70.)

**SO ORDERED.**

ENTERED: August 7, 2014

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**